**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| BRANDON FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:12-cv-00128 |
| v. | ) | Chief Judge Haynes |
| | ) | |
| ENOCH GEORGE, individually and in his official capacity as sheriff of Maury County, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM

Plaintiff, Brandon Frazier, filed this action under 42 U.S.C. § 1983 against Defendants Enoch George, Bucky Rowland, Lt. Debra Wagonshutz, Floyd Sealey, Maury Regional Medical Center, ABL Management, Inc., and Genella Potter. Plaintiff alleges that the conditions of confinement in the Maury County Jail are inhumane and constitute a violation of his rights under the First, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution as well as the Federal Civil Rights Act.

Before the Court is Defendants ABL Management and Genella Potter's motion for summary judgment (Docket Entry No. 91), contending in sum that: (1) Defendant Genella Potter cannot be liable to Plaintiff in her individual capacity because she neither participated in the conduct that allegedly violated Plaintiff's constitutional rights nor acted with deliberate indifference toward Plaintiff, (2) no policy, custom, or practice of ABL violated Plaintiff's constitutional rights, (3) Plaintiff's claims are barred by the one-year statute of limitations, and (4) Plaintiff's injunctive relief claim is moot as a result of his transfer from the Maury County Jail. In response (Docket Entry No. 132), Plaintiff contends that genuine issues of material fact preclude summary judgment.

## A. Review of the Record[1]

Plaintiff, Brandon Frazier, was booked into the Maury County Jail on June 27, 2011, and remained incarcerated there until his transfer to the Tennessee Department of Corrections in March 2013. (Docket Entry No. 133, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶¶ 1, 8).

Although the June 27, 2011 booking report reflects that Plaintiff weighed 250 pounds upon booking, Plaintiff alleges that he weighed 290 pounds when he was booked into the Maury County Jail. Id. at ¶¶ 2-3. Fifteen days after Plaintiff was booked, he weighed 274 pounds with a height of 5'11." Id. at ¶¶ 4, 19. At this height and weight, Plaintiff's BMI measured 38.2, which is consistent with Class 2 obesity. Id. at ¶ 20. On February 22, 2012, Plaintiff weighed 192 pounds. Id. at ¶5. At the time of his transfer from the Maury County Jail, Plaintiff alleges that he weighed 185 pounds; Defendants contend that Plaintiff's actual weight upon transfer was195 pounds. Id. at ¶ 9.

Defendant ABL Management, Inc. has a contract with the Maury County Jail whereby ABL Management agrees to provide inmates with meals that meet all nutritional standards imposed by the U.S. Bureau of Prisons, the American Correctional Association Standards, and any standards required by federal, state, or local laws and regulations. (Docket Entry 127-7, Management Operating Agreement at 2).

Defendant Genella Potter is the Food Service Director for ABL at the Maury County Jail.

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247–52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Thus, this section does not constitute a findings of fact under Fed. R. Civ. P. 56.

(Docket Entry No. 127-14, Deposition of Genella Potter at 5). Her responsibilities include ordering food (id. at 10) and overseeing the production sheets, that reflect the amount of food served, the temperatures for that meal, and whether any substitutions were made. (Docket Entry No. 127-6, Deposition of George Michael Craft at 4).

In addition to his own complaints about the insufficient quantity of food served, Plaintiff cites to several Incident Reports reflecting that the actual quantity of food served differed from the quantity called for in the ABL menu. (Docket Entry No. 127-15). Further, it is the policy of ABL to discard production sheets after only six months. (Docket Entry No, 127-6, Deposition of George Michael Craft at 4).

It is undisputed that Plaintiff never spoke to, or had any communication with, Defendant Potter or anyone with ABL Management. (Docket Entry No. 133, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶¶ 40-41). Plaintiff only talked to correctional officers and Defendant Wagonshutz regarding the allegedly insufficient food at Maury County Jail. Id. at 42. Potter's affidavit reflects that she was never aware of any (claims of) inmates losing weight at the Maury County Jail, and that she never personally participated in, or encouraged others to participate in, depriving Plaintiff of sufficient food. (Docket Entry No. 91-4, Potter Affidavit at ¶¶ 5, 7-9). Yet, Plaintiff contends that Potter was aware, generally, of a food shortage at the Maury County Jail.

The record reflects that Potter was informed, on more than one occasion, that food shortages were occurring. (Docket Entry 127-20). She was also aware that the correctional officers were measuring the contents of the food trays in 2012. (Docket Entry No. 127-14, Deposition of Genella Potter at 21). Further, as Food Service Manager, Potter prepares the production sheets. (Docket Entry 127-6, Deposition of George Michael Craft at 4). Additionally, ABL's Employee Performance

Evaluation for Genella Potter, dated June 4, 2011, reflects that Potter can improve by "keep[ing] par inventory down." (Docket Entry No. 127-13).

The reports of both Plaintiff's and Defendants' experts reflect that ABL's daily menus, as planned, provide approximately 2,650-3,000 calories per day, which is consistent with the recommended daily allowance ("RDA") for a male of average height and average weight. (Docket Entry No. 91-2, Affidavit of Dr. Hayes ¶¶ 12-13; Docket Entry No. 125-1, Expert Report of Dr. Silver at 5). Yet, in order for Plaintiff to maintain his BMI category of Class 2 obesity, he would have to receive a total daily energy expenditure of 3,387 calories per day based on a mild degree of activity. (Docket Entry No. 133, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 26). Similarly, both experts acknowledge that Plaintiff experienced "clinically significant" weight loss while incarcerated at the Maury County Jail. (Docket Entry No. 125-1 at 6; Docket Entry No. 91-2 at 5).

Although his exact pre-incarceration daily caloric intake is disputed, both parties acknowledge that Plaintiff's pre-incarceration diet consisted of "home cooking" which included fat and sugar quantities that contributed to his state of obesity upon entry into the Maury County Jail. (Docket Entry No. 133, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶¶ 29-30).

No doctor has told Plaintiff that his diet at the Maury County Jail caused him any injury or is harmful to his health. Id. at ¶¶ 14-15. Yet, Plaintiff alleges that he has suffered health consequences as a result of his weight loss. In addition to Dr. Silver's opinion that Plaintiff's weight loss was clinically significant, a Physician Assistant noted that Plaintiff's complaints of dizziness and anemia could have been the result of weight loss. Id. at 18.

**B. Conclusions of Law**

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247–48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355–57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden–Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the

Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> ....
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in

> support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute....'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479–80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Individual Capacity

Defendants contend that Genella Potter cannot be held liable in her individual capacity. A section 1983 claim plaintiff must show: (1) the deprivation of a right secured by the Constitution or

laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Street v. Corrections Corp. of America, 102 F.3d 810, 814 (6th Cir. 1996). Thus, in order to hold Defendant Potter individually liable, Plaintiff must establish a "causal connection" between Potter and the alleged violations. Dunn v. State of Tennessee, 697 F.2d 121, 128 (6th Cir. 1982). In most contexts, mere negligence will not suffice to support a section 1983 claim. Smoak v. Hall, 460 F.3d 768, 785 (6th Cir. 2006). Rather, Plaintiff must demonstrate that Potter personally condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's constitutional rights. Birrell v. Brown, 867 F.2d 956, 959 (6th Cir. 1989).

The Court may, however, infer notice from circumstantial evidence. Thus, "[a]n official's knowledge of the risk may be demonstrated through circumstantial evidence and inference, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Barker v. Goodrich, 649 F.3d 428, 434 (6th Cir. 2011) (quoting Spencer v. Bouchard, 449 F.3d 721, 729 (6th Cir. 2006)).

Here, Plaintiff admits that he never spoke to Potter, never had any written communication with Potter, and never submitted any grievances to Potter. (Docket Entry No. 91-1, Frazier Deposition at 13). It is undisputed that Defendant Potter never had any knowledge of this specific Plaintiff's alleged weight loss or his claim that the weight loss was the result of not receiving enough food. (Docket Entry No. 133, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶¶ 44-45).

Yet, Plaintiff contends that Potter was on notice that inmates, generally, were hungry. In this regard, the record reflects that Potter was informed, on more than one occasion, that food shortages were occurring. (Docket Entry 127-20). She was also aware that the correctional officers were

measuring the contents of the food trays in 2012. (Docket Entry No. 127-14, Deposition of Genella Potter at 21). Further, as Food Service Director, Potter prepares the production sheets, reflecting the amount of food served, the temperatures for that meal, and whether any substitutions were made. (Docket Entry 127-6, Deposition of George Michael Craft at 4).

Accordingly, the Court concludes that a genuine issue of material fact exists regarding the extent of Defendant Potter's knowledge of, and participation in, the alleged violations of Plaintiff's rights with respect to the adequacy of the food served at the Maury County Jail.

**2. Deliberate Indifference**

In the context of a conditions of confinement action, the claimant must demonstrate "deliberate indifference" on the part of the alleged wrongdoer. This deliberate indifference standard contains both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825 (1994).

First, "the deprivation alleged must be, objectively, sufficiently serious." Id. at 834. Courts have held that there is a substantial risk of serious harm "in the denial of the minimal civilized measure of life's necessities," including adequate food. Spencer v. Bouchard, 449 F.3d 721, 727-28 (6th Cir. 2006). Second, the claimant must demonstrate, subjectively, that the prison official acted with a "sufficiently culpable state of mind" with respect to the inmate's health or safety. Farmer, 511 U.S. at 834. Thus, Plaintiff must show that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. Id. at 842.

Here, Defendant contends, first, that Plaintiff did not objectively suffer a sufficiently serious deprivation because complaints about food quality or preparation are "far removed from Eighth Amendment concerns." Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977). The Court recognizes that Plaintiff cannot claim a violation of his Eighth Amendment rights on the basis of

poor quality of food. The relevant issue, however, is not whether the quality (or lack thereof) of the food served in the Maury County Jail constitutes a violation of Plaintiffs' Eighth Amendment rights. Rather, the relevant issue is whether the meals served are constitutionally adequate with respect to maintaining Plaintiffs' health.

Defendants rely on Florer v. Bales-Johnson, 752 F. Supp.2d 1185 (W.D. Wash. 2010), for the proposition that scientific standards can set the proper amount of calories for a particular class of inmates. Indeed, it appears well recognized that males, aged 19-25 and of average height and body weight, require approximately 2,600-3,000 calories per day, depending on physical activity level. (Docket Entry No. 125-1, Report of Heidi Silver at 5). Yet, in Florer, the court concluded that the plaintiff's weight never dropped below the minimum healthy weight for a man of his size. Florer, 742 F. Supp.2d at 1201. Here, Plaintiff's expert, Dr. Silver, opines that, at the time of entry to the Maury County Jail, Plaintiff was not of the same height and weight of the average male. (Docket Entry No. 125-1, Report of Heidi Silver at 5). Thus, Plaintiff's estimated energy requirements would differ from those upon which the RDA is based. Id.

Experts for both Plaintiff and Defendants acknowledge that Plaintiff experienced "clinically significant" weight loss. (Docket Entry No. 91-2 at 5; Docket Entry No. 125-1 at 6). Therefore, despite the fact that no doctor has told Plaintiff that his diet at the Maury County Jail caused him any harmful health impairments, Plaintiff has at least created a disputed issue of material fact as to whether his "clinically significant" weight loss constitutes an objectively serious health risk. Additionally, there exists a disputed material fact withe respect to whether the food served by ABL was so unpalatable that it affected Plaintiff's ability to meet his required daily caloric intake. (Docket Entry No. 125-1, Report of Heidi Silver at 6).

Regarding the subjective component of the deliberate indifference standard, Plaintiff has sufficiently created a genuine issue of material fact as to Defendants' knowledge and participation in the alleged violations of his rights. As explained above, the record reflects that Potter was informed, on more than one occasion, that food shortages were occurring. (Docket Entry 127-20). She was also aware that the correctional officers were measuring the contents of the food trays in 2012. (Docket Entry No. 127-14, Deposition of Genella Potter at 21). Further, ABL's Employee Performance Evaluation for Genella Potter, dated June 4, 2011, reflects that Potter can improve by "keep[ing] par inventory down." (Docket Entry No. 127-13).

Thus, whether Defendants' conduct constitutes deliberate indifference is a disputed question of fact for the jury to determine.

**3. Official Capacity**

Next, Defendants contend that summary judgment should be granted in favor of ABL Management, in its official capacity, because: (1) there is no underlying constitutional violation, and (2) no policy, custom, or practice of ABL Management violated Plaintiff's rights.

As set forth above, a genuine issue of disputed material fact exists as to whether the conduct of ABL Management and/or Genella Potter constitutes a violation of Plaintiff's rights. Thus, Defendant's contention that summary judgment should be granted on the basis of there being no underlying constitutional violation is not well taken.

Yet, ABL cannot be held liable under section 1983 unless Plaintiff demonstrates that ABL maintained a custom or policy that caused the alleged constitutional violation. See Johnson v. Karns, 398 F.3d 868, 877 (6th Cir. 2005). As has been set forth above, there exists a genuine dispute as to whether ABL was, in fact, complying with its own menu as planned. Several Incident Reports reflect

that the actual quantity of food served differed from the quantity called for in the ABL menu. (Docket Entry No. 127-15). Further, ABL's Employee Performance Evaluation for Genella Potter, dated June 4, 2011, reflects that ABL informed Potter that she could improve by "keep[ing] par inventory down." (Docket Entry No. 127-13). Thus, whether ABL Management may be liable in its official capacity remains a disputed issue of material fact.

**4. Statute of Limitations**

Defendants contend that Plaintiff's First Amended Complaint (Docket Entry No. 22), which brought ABL Management and Genella Potter into this action, cannot relate back to the original Complaint (Docket Entry No. 1) because it merely adds new parties rather than corrects a mistake.

The applicable statute of limitations in a section 1983 action is the statute of limitations applicable to personal injury actions under the law of the state in which the section 1983 claim arises. Kuhnle Bros., Inc. v. County of Geauga, 103 F.3d 516, 519 (6th Cir. 1997). Under Tennessee law, the applicable statute of limitations is one year. The date from which the statute of limitations begins to run, however, is a question of federal law. Id. at 520. Generally, the limitation period starts to run when the plaintiff knows or has reason to know of the injury that serves as the basis of the section 1983 action. Id.

Sixth Circuit precedent is clear that an amendment that "adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." In re Kent Holland Die Casting & Plating Inc., 928 F.2d 1448, 1449 (6th Cir.1991) (quoting Marlowe v. Fisher Body, 489 F.2d 1057, 1064 (6th Cir.1973)). Such an amendment "establishes a new and independent cause of action which cannot be maintained when the statute has run, for

the amendment is one of substance rather than one of form and brings into being one not presently in court." United States ex rel. Statham Instruments, Inc. v. Western Cas. & Surety Co., 359 F.2d 521, 523 (6th Cir.1966).

Yet, under Fed. R. Civ. P. 15(c), amendments to a complaint will relate back to the original pleading so long as the newly added party had sufficient notice of the action and the amendment serves to correct a misnomer. Collyer v. Darling, 98 F.3d 211, 220 (6th Cir. 1996). Here, Plaintiff's original Complaint (filed pro se), which lists only Enoch George and Debra Wagonschutz as Defendants, alleges that the Maury County Jail has failed to furnish adequate food. The Court is of the opinion that Plaintiff's failure to include ABL Management and Genella Potter as defendants in the original Complaint constitutes a genuine mistake or misnomer. See Ringrose v. Engelberg Huller Co., Inc., 692 F.2d 403 (6th Cir. 1982). Further, given both the contractual relationship between the Maury County Jail and ABL Management and the volume of complaints filed in which inmates at the Maury County Jail alleged inadequate meals, Defendants ABL Management and Genella Potter should have known that the action would have been brought against them, but for Plaintiff's mistake concerning the proper party's identity. See Krupski v. Costa Crociere S. p. A., 560 U.S. 538 (2010) (noting that the interrelationship and similarity of the named defendant and the proper defendant heightened the expectation that the proper defendant should suspect a mistake has been made when the other is named in a complaint that actually describes the activities of the proper defendant).

Accordingly, Plaintiff's Amended Complaint (Docket Entry No. 22) relates back to the date of the original Complaint (Docket Entry No. 1) under Rule 15.

## 5. Injunctive Relief

Finally, Defendants contend that Plaintiff's claims for injunctive relief are moot because he is no longer incarcerated at the Maury County Jail. Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996). It is undisputed that Plaintiff was transferred from the Maury County Jail to the Tennessee Department of Corrections in March 2013. (Docket Entry No. 133, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 8). Accordingly, Plaintiff's claims for injunctive relief are moot. See Colvin v. Caruso, 605 F.3d 282, 289 (6th Cir. 2010) (holding that the plaintiff's request for declaratory and injunctive relief were moot because the plaintiff's requests were directed specifically at the policies of the Alger Maximum Correctional Facility, from which he had been transferred, and not the Michigan Department of Corrections' kosher-meal program as a whole).

Plaintiff asserts that claim for injunctive relief is capable of repetition, yet evading review. This exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Kentucky v. U.S. ex rel. Hagel, 795 F.3d 588, 595-96 (6th Cir. 2014) (citing Federal Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462 (2007)). Here, Plaintiff has failed to demonstrate that the challenged action is, in its duration, too short to be fully litigated prior to cessation. Further, Plaintiff contends that, because of his past criminal history, there is a reasonable expectation that he will be incarcerated in the Maury County Jail again, and thus again subjected to the same action. The Court is not persuaded that Plaintiff has sufficiently demonstrated a reasonable expectation of future harm.

Accordingly, Defendants motion is well taken in this regard, and Plaintiff's claim for injunctive relief is moot.

### C. Conclusion

For these reasons, the Court concludes that the Defendants' motion for summary judgment (Docket Entry No. 91) is granted with respect to Plaintiff's claims for injunctive relief. Defendants' motion is denied in all other respects.

An appropriate Order is filed herewith.

**ENTERED** this the 30th day of September, 2014.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court