**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

BRANDON FRAZIER, )
)
    Plaintiff, )
)
                          )    No. 1:12-cv-00128
v. )    Judge Haynes
)
ENOCH GEORGE, individually and in his )
official capacity as sheriff of Maury County, et al., )
)
    Defendants. )

### M E M O R A N D U M

Plaintiff, Brandon Frazier, filed this action under 42 U.S.C. § 1983 against Defendants Enoch George, Bucky Rowland, Lt. Debra Wagonshutz, Floyd Sealey, Maury Regional Medical Center, ABL Management, Inc., and Genella Potter. Plaintiff alleges that the conditions of confinement in the Maury County Jail are inhumane and constitute a violation of his rights under the First, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution as well as the Federal Civil Rights Act.

Before the Court is Defendants Enoch George and Debra Wagonschutz's motion for summary judgment (Docket Entry No. 94), contending in sum that: (1) Defendants cannot be liable to Plaintiff in their official capacities because Plaintiff cannot show an unconstitutional policy, practice, or custom, (2) Defendants cannot be held liable in their individual capacities because they are entitled to qualified immunity, and (3) Plaintiff's claims for injunctive relief are moot as a result of his transfer from the Maury County Jail. In response (Docket Entry No. 127), Plaintiff contends that genuine issues of material fact preclude summary judgment.

## A. Findings of Fact[1]

Plaintiff, Brandon Frazier, was incarcerated at the Maury County Jail from June 26, 2011 until March 27, 2013. (Docket Entry No. 128, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 1). Defendant Enoch George served as Sheriff of Maury County from 1994 until August 2014. In 2014, Defendant Bucky Rowland took office as Sheriff of Maury County.[2] Defendant Debra Wagonschutz was, at all times relevant to this action, the Jail Supervisor of the Maury County Jail. (Docket Entry No. 127-5, Deposition of Debra Wagonschutz at 6). In her role as Jail Supervisor, Defendant Wagonschutz acts as the chief administrative officer of the Maury County Jail, overseeing all operations through regular inspection and review. Id. Defendant George discusses recommended policy changes with the jail supervisors, including Defendant Wagonschutz. (Docket Entry No. 127-4, Deposition of Enoch George at 15).

Upon his booking at the Maury County Jail, Plaintiff estimates that he weighed 290 pounds. Id. at ¶ 2. Fifteen days after Plaintiff was booked, he weighed 274 pounds. Id. Given his height and weight, Plaintiff's BMI measured 38.2, which is consistent with Class 2 obesity. Id. at ¶ 3. Although

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247–52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Thus, this section constitutes a findings of fact under Fed. R. Civ. P. 56.

[2] The Court notes that Defendant Bucky Rowland now serves as Sheriff of Maury County, and has been added, in his official capacity, as a Defendant in this lawsuit subsequent to the filing of Defendants' motion for summary judgment. Therefore, although Defendants' motion for summary judgment indicates that it is filed on behalf of Defendants George and Wagonschutz, the Court will interpret the motion as filed on behalf of Defendant Rowland, in his official capacity, as well.

his exact pre-incarceration daily caloric intake is disputed, both parties acknowledge that Plaintiff's pre-incarceration diet consisted of "home cooking" which included fat and sugar quantities that contributed to his state of obesity upon entry into the Maury County Jail. Id. at ¶ 4. At the time of his transfer from the Maury County Jail, Plaintiff alleges that he weighed 185 pounds; Defendants contend that Plaintiff's actual weight upon transfer was195 pounds. Id. at ¶ 7.

On several occasions, Plaintiff told Defendant Wagonschutz about food shortages. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 81-82). In addition to his own complaints about the insufficient quantity of food served, Plaintiff cites to several Incident Reports reflecting that the actual quantity of food served differed from the quantity called for in the ABL menu. (Docket Entry No. 127-15). These Incident Reports are consistent with a January 7, 2013 email from Nathan Johns that notified Defendant Wagonschutz about prisoner complaints concerning the conditions of confinement, including complaints about the food. (Docket Entry No. 127-20). The email reflects that correctional officers were measuring the contents of the food trays in 2012, and found several instances of measurable food shortages. Id. Defendant Wagonschutz, herself, conducted a random tray test that found a shortage of pudding in June 2012. (Docket Entry No. 127-5, Deposition of Debra Wagonschutz at 25). Defendant Wagonschutz relayed these findings to Genella Potter, the kitchen supervisor. Id. Defendant George testified that he was generally aware of inmate complaints regarding inadequate meals. (Docket Entry No. 127-4, Deposition of Enoch George at 7-8).

The reports of both Plaintiff's and Defendant ABL Management's experts reflect that the daily menus, as planned, provide approximately 2,650-3,000 calories per day, which is consistent with the recommended daily allowance ("RDA") for a male of average height and average weight. (Docket Entry No. 91-2, Affidavit of Dr. Hayes ¶¶ 12-13; Docket Entry No. 125-1, Expert Report

3

of Dr. Silver at 5). Yet, in order for Plaintiff to maintain his BMI category of Class 2 obesity, he would have to receive a total daily energy expenditure of 3,387 calories per day based on a mild degree of activity. (Docket Entry No. 133, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 26). Similarly, both experts acknowledge that Plaintiff experienced "clinically significant" weight loss while incarcerated at the Maury County Jail. (Docket Entry No. 125-1 at 6; Docket Entry No. 91-2 at 5). According to the contracted Physician Assistant, Plaintiff's low white blood count could be the result of recent significant weight loss. (Docket Entry No. 127-19 at 2).

On September 24, 2012, Plaintiff complained of dizziness, blurred vision, and weakness. (Docket Entry No. 128, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 16). In response, Plaintiff's blood sugar was checked each day from October 19, 2012 until October 26, 2012. Id. at ¶ 17. On November 21, 2012, Plaintiff went to the Ambulatory Care Clinic ("Clinic"), where Dr. Berschied drew his blood. Id. On December 11, 2012, Plaintiff's blood work was repeated at the Maury Regional Hospital. Id. at ¶ 20. The December 11, 2012 blood work showed a low white and red blood cell count, but Plaintiff did not return to the doctor. Id. at ¶ 21.

Plaintiff later testified that the issue with his blurred vision was actually the result of a laceration sustained to his left eye during an altercation in February 2012, for which he received treatment at the Clinic immediately thereafter. Id. at ¶ 23. Although Plaintiff testified that he continued to have issues with his vision, it has not interfered with his daily activities and additional medical treatment had not yet become necessary. Id.

In January 2013, Plaintiff injured his shoulder and left lower extremity after falling from his bunk bed. Id. at ¶ 24. Shortly after the incident occurred, Plaintiff was evaluated by the medical staff at the Jail. Id. After requesting a second opinion, Plaintiff received additional care at the Clinic on

February 20, 2013. Id. There, Plaintiff received an ultrasound of his left lower extremity and x-rays of his shoulder, left ankle, and left foot. Id. The x-rays were negative for any sort of fracture, and the ultrasound was negative for a clot. Id. The Clinic recommended that Plaintiff receive a compression hosiery for his left lower extremity, and that he see internal medicine as to the cause of his anemia. Id. Although Plaintiff never received the compression hosiery, the swelling eventually subsided, and Plaintiff testified that he has not had a problem like that since being released from prison. Id. at ¶ 26. Due to Plaintiff's status as a Hickman County inmate, who was temporarily housed at the Maury County Jail for capacity reasons, authorization for the compression hosiery had to be made by Hickman County. Id. at ¶ 27. Such authorization was sought, and was still pending when Plaintiff was transferred from Maury County Jail into the custody of the Tennessee Department of Corrections. Id. Although Plaintiff did not see an internal medicine physician, his blood work came back normal when it was tested at the Hickman County Clinic. Id. at ¶ 28.

Plaintiff also alleges inadequate/unsanitary housing, overcrowding, and raw sewage. Specifically, Plaintiff alleges that, during his incarceration at the Maury County Jail, there was: (1) mold and mildew in the showers and on the mattresses, (2) rust, rodents, spiders, and ants present, (3) little natural light, (4) long periods without hot water, and (5) that the jail was very cold in the winter. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 115-19). Defendant George testified that the showers were recently refurbished for the first time in 14 years. (Docket Entry No. 127-4, Deposition of Enoch George at 11).

Plaintiff also testified that he slept on the floor for approximately three months while in the max pod. (Docket Entry No. 128, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 43). Defendant George testified that he depends on Defendant Wagonschutz to take care of

overcrowding issues in the maximum security cells. (Docket Entry No. 127-4, Deposition of Enoch George at 12). Defendant Wagonschutz testified that, when three or four people are confined to a two-person cell, the extra inmates sleep on the floor. (Docket Entry No. 127-5, Deposition of Debra Wagonschutz at 11).

Plaintiff also testified that, when he was in max, there was raw sewage (urine and human feces) on the floor every day due to leaky toilets. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 130-32). Plaintiff testified that he had to clean up the raw sewage and sleep near it. Id. at 131-32.

Plaintiff does not know if any doctor or medical care professional has diagnosed him with any type of condition that resulted from the allegedly unsanitary conditions at the Maury County Jail. (Docket Entry No. 128, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶¶ 32-35). Yet, Plaintiff described the cold temperature as very uncomfortable. Id. at ¶ 38. When inmates complained of cold temperatures, they were either moved out of the cell, if there was another cell available, or they were given extra blankets. (Docket Entry No. 127-5, Deposition of Debra Wagonschutz at 27).

Plaintiff's Third Amended Complaint alleges that there is no recreational equipment at the Maury County Jail. (Docket Entry No. 89, Third Amended Complaint at ¶ 37). Yet, Defendant George testified that, in response to the Court's prior suggestion, three basketball goals have been installed for recreational purposes. (Docket Entry No. 127-4, Deposition of Enoch George at 11). Instead, Plaintiff claims to have been injured by a lack of recreation time, meaning that he did not get enough sun. (Docket Entry No. 128, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 41).

Plaintiff testified that the deodorant provided by the Maury County Jail caused him to break out, and that he does not think the toothpaste helped his teeth. Id. at ¶ 45. Yet, Plaintiff admitted that he did not develop any type of dental problems as a result of the toothpaste, and simply stopped using the deodorant. Id.

Plaintiff acknowledges that he has not been injured by the allegedly insufficient law library. Id. at ¶ 42.

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

> As to materiality, the substantive law will identify which facts are

7

> material. Only disputes over facts that might affect the outcome of the
> suit under the governing law will properly preclude the entry of
> summary judgment. Factual disputes that are irrelevant or
> unnecessary will not be counted.

477 U.S. at 247–48 (emphasis in the original and added in part). Earlier the Supreme Court defined

a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita

Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the

party opposing the motion must make an affirmative showing of the need for additional discovery

after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355–57

(6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir.

1989).

There is a certain framework in considering a summary judgment motion as to the required

showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the
> affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.... [W]e find no express or implied
> requirement in Rule 56 that the moving party support its motion with
> affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule

56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n.4 (6th Cir. 1986). The moving party's

burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden–Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and] . . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.

....

> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict-"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute....'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation

omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be

read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43,

46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a

summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1.    Complex cases are not necessarily inappropriate for summary judgment.

> 2.    Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

> 3.    The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

> 4.    This burden may be met by pointing out to the court that the

11

respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.      A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.      As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.      The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.      The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.      The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.     The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479–80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to

establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

### 1. Official Capacity

Defendants contend that they cannot be held liable in their official capacities on Plaintiff's section 1983 claim because Plaintiff cannot point to any unconstitutional policy, practice, or custom.

A suit against a defendant in his or her official capacity "is permissible under § 1983, and is equivalent to a suit against the entity on whose behalf he acts." Johnson v. Karnes, 398 F.3d 868, 877 (6th Cir. 2005). Thus, Plaintiff's claims against these Defendants are equivalent to a suit against Maury County.

It is well settled that "while a municipality may not be held liable for the unconstitutional actions of its employees or agents under a respondeat superior theory, a municipality may be held liable where the unconstitutional actions of its employees or agents resulted from the execution of an official policy or custom." Milligan v. U.S., 644 F. Supp.2d 1020 (M.D. Tenn. 2009) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1968)).

Here, Plaintiff fails to offer any evidence demonstrating the existence of an express unconstitutional policy. Yet, Plaintiff may also prove the existence of an unconstitutional policy through evidence of "a custom of tolerance or acquiescence of federal rights violations." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005). To do so, Plaintiff must provide evidence of (1) a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the defendant; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their

13

deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation. Id.

As set forth below, genuine issues of material fact exist regarding the extent to which these Defendants fostered a custom of tolerance or acquiescence of federal rights violations with respect to several of Plaintiff's claims. Accordingly, summary judgment is denied with respect to the official capacity claims against these Defendants for Plaintiff's claims of inadequate food, inadequate recreation, overcrowding, and raw sewage.

### 2. Individual Capacity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Determining whether a government official is entitled to qualified immunity requires a two part inquiry: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" Phillips v. Roane County, 534 F.3d 531, 538-39 (6th Cir. 2008).

A plaintiff asserting a section 1983 claim must show: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. Street v. Corrections Corp. of America, 102 F.3d 810, 814 (6th Cir. 1996). Thus, in order to hold these Defendants individually liable, Plaintiff must establish a "causal connection" between them and the alleged violations. Dunn v. State of

14

Tennessee, 697 F.2d 121, 128 (6th Cir. 1982). In most contexts, mere negligence will not suffice to support a section 1983 claim. Smoak v. Hall, 460 F.3d 768, 785 (6th Cir. 2006). Rather, Plaintiff must demonstrate that these Defendants personally condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's constitutional rights. Birrell v. Brown, 867 F.2d 956, 959 (6th Cir. 1989).

In the context of a conditions of confinement action, the claimant must demonstrate "deliberate indifference" on the part of the alleged wrongdoer. This deliberate indifference standard contains both an objective and subjective component. Farmer v. Brennan, 511 U.S. 825 (1994).

First, "the deprivation alleged must be, objectively, sufficiently serious." Id. at 834. Courts have held that there is a substantial risk of serious harm "in the denial of the minimal civilized measure of life's necessities." Spencer v. Bouchard, 449 F.3d 721, 727-28 (6th Cir. 2006). Second, the claimant must demonstrate, subjectively, that the prison official acted with a "sufficiently culpable state of mind" with respect to the inmate's health or safety. Farmer, 511 U.S. at 834. Thus, Plaintiff must show that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. Id. at 842.

The Court may, however, infer notice from circumstantial evidence. Thus, "[a]n official's knowledge of the risk may be demonstrated through circumstantial evidence and inference, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Barker v. Goodrich, 649 F.3d 428, 434 (6th Cir. 2011) (quoting Spencer v. Bouchard, 449 F.3d 721, 729 (6th Cir. 2006)).

### a. Inadequate Food

Generally, complaints about food quality or preparation are "far removed from Eighth Amendment concerns." Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977). The Court recognizes that Plaintiff cannot claim a violation of his Eighth Amendment rights on the basis of poor quality of food. The relevant issue, however, is not whether the quality (or lack thereof) of the food served in the Maury County Jail constitutes a violation of Plaintiffs' Eighth Amendment rights. Rather, the relevant issue is whether the meals served are constitutionally adequate with respect to maintaining Plaintiffs' health.

Plaintiff's expert, Dr. Silver, opines that Plaintiff experienced "clinically significant" weight loss. (Docket Entry No. 100-1, Expert Report of Heidi J. Silver at 7). Therefore, despite the fact that no doctor has told Plaintiff that his diet at the Maury County Jail caused him any harmful health impairments, Plaintiff has at least created a disputed issue of material fact as to whether his "clinically significant" weight loss constitutes an objectively serious health risk. Additionally, there exists a disputed material fact with respect to whether the food served by ABL was so unpalatable that it affected Plaintiff's ability to meet his required daily caloric intake. Id. at 6.

Regarding the subjective component of the deliberate indifference standard, Plaintiff has sufficiently created a genuine issue of material fact as to these Defendants' knowledge of, and participation, in the alleged violations of his rights. The record reflects that, on several occasions, Plaintiff told Defendant Wagonschutz about food shortages. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 81-82). Further, a January 7, 2013 email from Nathan Johns notified Defendant Wagonschutz about prisoner complaints about the food. (Docket Entry No.

127-20). The email reflects that correctional officers were measuring the contents of the food

trays in 2012, and found several instances of measurable food shortages. Id. Defendant

Wagonschutz, herself, conducted a random tray test that found a shortage of pudding in June

2012. (Docket Entry No. 127-5, Deposition of Debra Wagonschutz at 25). Defendant

Wagonschutz relayed these findings to Genella Potter, the kitchen supervisor. Id. Defendant

George also testified that he was generally aware of inmate complaints regarding inadequate

meals. (Docket Entry No. 127-4, Deposition of Enoch George at 7-8).

Thus, whether these Defendants' conduct constitutes deliberate indifference is a disputed

question of fact for the jury to determine.

### b. Inadequate Medical Care

In the context of a constitutional claim for denial of medical care, the objective

component requires that the prisoner have suffered from a "sufficiently serious" medical need.

Farmer v. Brennan, 511 U.S. 825, 834 (1994). The subjective component requires an inmate to

show that prison officials have "a sufficiently culpable state of mind in denying medical care."

Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000).

The Court recognizes that, in Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court

distinguished deliberate indifference to serious medical needs of prisoners from negligence in

diagnosing or treating a medical condition, holding that only the former violates the Eighth

Amendment. See Farmer v. Brennan, 511 U.S. 825, 835 (1994). Yet, here, Plaintiff's claims are

not focused solely on the quality of the medical care actually rendered. Rather, Plaintiff also

alleges delays in the provision of medical care. For example, Plaintiff alleges that, although he

was evaluated by the Clinic shortly after falling from his bunk, he did not see a physician until a

month later. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 190).

Yet, even if the Court were to assume that Plaintiff has established a constitutional violation, Plaintiff "concedes that the Sheriff may not have had knowledge of Plaintiff's injuries and lack of adequate medical attention, but Lt. Wagonschultz saw the inmates on a day-to-day basis . . . She would have heard Frazier's complaints." (Docket Entry No. 127, Plaintiff's Response to Defendants' Motion for Summary Judgment at 17-18). This assertion alone, without any citation to the record to suggest that these Defendants knew of and disregarded an excessive risk to Plaintiff's health, cannot suffice to withstand a motion for summary judgment. Accordingly, there are no genuine issues of material fact with respect to these Defendants and Plaintiff's claim for inadequate medical care.

### c. Inadequate and Unsanitary Housing

Although comfortable prisons are not mandated, and restrictive or even harsh conditions do not violate the Eighth Amendment, a prisoner may not be subjected to a condition which strips him of the bare necessities of life. Starnes v. Green Co. Sheriff's Dept., 2010 WL 2165368 at *3 (E.D. Tenn. 2010) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Thus, the Eighth Amendment does not afford protection against conditions of confinement which cause mere discomfort or inconvenience. Hunt v. Reynolds, 974 F2d 734, 735 (6th Cir. 1992).

Plaintiff includes several specific allegations under his claim for inadequate and unsanitary housing. (Docket Entry No. 89, Plaintiff's Third Amended Complaint at 7). Yet, Plaintiff fails to allege any fact suggesting that the conditions of confinement complained of constitute anything more than discomfort or inconvenience.

The Court recognizes that the constitutional requirement of adequate shelter for an inmate

18

includes the provision of adequate lighting. Carney v. Craven, 40 Fed. App'x. 48, 51 (6th Cir. 2002). Yet, Plaintiff only alleges inadequate natural light. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 116). There is no evidence, or allegation, suggesting that the light, generally, was inadequate.

Similarly, claims involving improperly-cleaned showers, dirty mattresses, accumulated dust and dirt, and infestations of insects must rise above ordinary discomfort. See Taylor v. Luttrell, 2008 WL 4065927 at *9 (W.D. Tenn. 2008) (citing Geder v. Godinez, 875 F. Supp. 1334, 1341 (N.D. Ill. 1995)). Here, Plaintiff admits that he did not sustain any injuries as a result of the allegedly unsanitary conditions. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 115-119).

Further, a lack of hot water does not constitute an extreme deprivation. See Preston v. Smith, 750 F.2d 530, 534 (6th Cir. 1984) (finding no constitutional violation for confinement in segregation cell without mattress or hot water). Here, Plaintiff went without hot water for about two and a half weeks, before the hot water was eventually fixed. Id. at 117-18. Yet, Plaintiff acknowledges that he was not injured by this inability to shower with hot water for two and a half weeks. Id. at 118.

Accordingly, Plaintiff has failed to create any genuine issue of material fact elevating his unsanitary housing claim above mere discomfort and inconvenience.

### d. Recreation

It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity violates the Eighth Amendment. Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983). The determination of when restricted exercise rises to a level of constitutional magnitude

19

depends upon the facts of each case. Meador-Bey v. Jones, No. 92-1448, 983 F.2d 1067, at *1 (6th Cir. Dec. 18, 1992). Here, Plaintiff testified that the inadequate recreation at the Maury County Jail caused him injury. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 121-22). Further, Defendant George testified that he was aware of the concerns surrounding adequate recreation. (Docket Entry No. 127-4, Deposition of Enoch George at 11).

Accordingly, a genuine issue of disputed material fact exists as to the extent to which the available recreational opportunities at the Maury County Jail constituted a deprivation of Plaintiff's Eighth Amendment rights, and the extent to which these Defendants knew of, and participated in, that deprivation.

### e. Law Library

In order to state a claim for meaningful access to the courts, Plaintiff "must plead and prove prejudice stemming from the asserted violation." Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996). Thus, Plaintiff must demonstrate that the inadequacy of the prison law library "caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim." Id. Here, Plaintiff denies any such injury due to the allegedly inadequate law library. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 122). Accordingly, these Defendants are entitled to summary judgment on this claim.

### f. Overcrowding

Generally, overcrowding is not, per se, a violation of the Eighth Amendment. Radley v. Davidson County Shefiff's Office, No. 3:12-cv-403, 2912 WL 3113227, at *4 (M.D. Tenn. July 31, 2012) (citing Rhodes v. Chapman, 452 U.S. 337 (1981)). Thus, to support a claim for a violation of his constitutional rights, Plaintiff must allege facts showing that he was denied a

basic human need "or was otherwise subjected to cruel and unusual punishment by virtue of the alleged overcrowded conditions." Id.

Here, Plaintiff testified that he slept on the floor for approximately three months while he was in the max pod. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 125). The Court acknowledges that, "a prisoner has no right to sleep on an elevated bed." Goforth v. Sumner County, 2013 WL 1943020, *3 (M.D. Tenn. 2013) (citing Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986)). Yet, Plaintiff goes on to testify that, during this time period, he was exposed to raw sewage on the floor. For the reasons explained below, genuine issues of material fact preclude summary judgment on Plaintiff's raw sewage claim. Accordingly, genuine issues of material fact exist regarding the extent to which Plaintiff was subjected to cruel and unusual punishment by virtue of the alleged overcrowding.

### g. Inadequate Hygiene

Although the Eighth Amendment "prohibits the denial of basic needs, including hygiene," the Sixth Circuit has found that such claims must allege "extreme discomfort" or the complete denial of hygiene products. Argue v. Hofmeyer, 80 Fed. App'x. 427, 430 (6th Cir. 2003).

Here, Plaintiff testified that the jail-provided deodorant would "break him out" and that he did not think the toothpaste helped his teeth. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 129-30). Such cursory allegations, without more, do not suffice to preclude summary judgment.

### h. Raw Sewage

Generally, the mere presence of raw sewage, without an accompanying physical injury, does not constitute a violation of a prisoner's Eighth Amendment rights. See Gofarth, 2013 WL

21

1943020, at *3. In <u>Gofarth</u>, the plaintiff complained of being forced to endure the smell and unsanitary presence of human feces smeared on his cell door for 48 hours. <u>Id.</u> Here, Plaintiff testified that, when he was in max, there was raw sewage (urine and human feces) on the floor every day due to leaky toilets. (Docket Entry No. 127-1, Deposition of Brandon Frazier at 130-32). Plaintiff further testified that he had to clean up the raw sewage and sleep near it. <u>Id.</u> at 131-32.

The Court finds Plaintiff's alleged level of exposure to raw sewage distinguishable from cases such as <u>Gofarth</u>. Further, the sort of prolonged exposure to raw sewage complained of constitutes an obvious risk from which the Court may infer notice. <u>Barker v. Goodrich,</u> 649 F.3d 428, 434 (6th Cir. 2011) (quoting <u>Spencer v. Bouchard,</u> 449 F.3d 721, 729 (6th Cir. 2006)). Accordingly, genuine issues of material fact exists as to these Defendants' knowledge of, and participation in, the alleged violation.

### 3. Injunctive Relief

Finally, Defendants contend that Plaintiff's claims for injunctive relief are moot because he is no longer incarcerated at the Maury County Jail. <u>Kensu v. Haigh,</u> 87 F.3d 172, 175 (6th Cir. 1996). It is undisputed that Plaintiff was transferred from the Maury County Jail on March 27, 2013. (Docket Entry No. 128, Plaintiff's Response to Defendants' Statement of Undisputed Facts at ¶ 1). Accordingly, Plaintiff's claims for injunctive relief are moot. <u>See</u> <u>Colvin v. Caruso,</u> 605 F.3d 282, 289 (6th Cir. 2010) (holding that the plaintiff's request for declaratory and injunctive relief were moot because the plaintiff's requests were directed specifically at the policies of the Alger Maximum Correctional Facility, from which he had been transferred, and not the Michigan Department of Corrections' kosher-meal program as a whole).

22

Plaintiff asserts that his claim for injunctive relief is capable of repetition, yet evading review. This exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." <u>Kentucky v. U.S. ex rel. Hagel</u>, 795 F.3d 588, 595-96 (6th Cir. 2014) (citing <u>Federal Election Comm'n v. Wisconsin Right to Life, Inc.</u>, 551 U.S. 449, 462 (2007)). Here, Plaintiff has failed to demonstrate that the challenged action is, in its duration, too short to be fully litigated prior to cessation. Further, Plaintiff contends that, because of his past criminal history, there is a reasonable expectation that he will be incarcerated in the Maury County Jail again, and thus again subjected to the same action. The Court is not persuaded that Plaintiff has sufficiently demonstrated a reasonable expectation of future harm.

Accordingly, Defendants' motion is well taken in this regard, and Plaintiff's claim for injunctive relief is moot.

### C. Conclusion

For these reasons, the Court concludes that these Defendants' motion for summary judgment (Docket Entry No. 94) is granted with respect to Plaintiff's claims for inadequate medical care, unsanitary housing, inadequate law library, and inadequate hygiene. Defendants' motion for summary judgment is also granted with respect to Plaintiff's claims for injunctive relief. Defendants' motion is denied in all other respects.

An appropriate Order is filed herewith.

**ENTERED** this the 3rd day of October, 2014.


WILLIAM J. HAYNES, JR.
United States District Court